272 So.2d 463 (1973)
Mrs. Marion L. BRIGNAC, Individually and as Usufructuary
v.
Elliott P. BOISDORE.
No. 5115.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 1973.
Rehearing Denied February 6, 1973.
Writ Granted April 19, 1973.
*464 Bridgeman & Conway, James R. Conway, III, New Orleans, for plaintiff-appellant.
Baldwin, Haspel, Molony, Rainold & Meyer, Conrad Meyer, IV, New Orleans, for third-party plaintiff-appellant.
Chaffe, McCall, Phillips, Toler & Sarpy, Charles B. Johnson, New Orleans, for third-party defendant-appellant.
Before REGAN, BOUTALL and BAILES, JJ.
BOUTALL, Judge.
This was originally a suit by a landlord to compel his tenant to pay his monthly rental installment. The plaintiff, Mrs. Marion L. Brignac, is the owner of the premises located at 1624 Dryades Street in the City of New Orleans. By written lease dated March 28, 1966, plaintiff leased to Elliott P. Boisdore, defendant-appellant, the aforesaid premises at a monthly rental of $550.00 per month. The term of this lease commenced on April 1, 1966, and terminated on March 31, 1969. By mutual consent of the parties the term of the lease was extended until September 30, 1969.
By written contract of lease dated March 31, 1966, defendant-appellant Elliott P. Boisdore, with the consent of Mrs. Marion L. Brignac, executed a sublease of the premises to Total Community Action, Inc., (herein referred to as T.C.A.). This sublease provided for a three year term commencing on March 31, 1966, but was subsequently extended by consent of all parties for a term ending on September 30, 1969. Thus the prime lease and the sublease terminated at the same time, September 30, 1969.
The consideration for the prime lease between plaintiff and defendant was a monthly rental of $550.00 per month. The consideration for the sublease between defendant and T.C.A., Inc., was a monthly rental of $1,777.35. The rental for both leases was due and payable in advance on the first day of each calendar month.
T.C.A. refused to pay the rent due by it to defendant Boisdore for the last month of the sublease, the month of September, 1969, on the grounds that the floor of these premises was in a state of disrepair. After T.C.A. refused to pay the monthly rental due for September of 1969, defendant refused to pay the monthly rental of $550.00 owed by him to the plaintiff, said sum being due also for the last month of the lease, the month of September, 1969.
Plaintiff then filed suit on June 11, 1970, against defendant to recover September's rent plus interest, attorney's fees and costs. Defendant answered this suit, reconvening against Brignac for certain improvements made on the lease premises which plaintiff refused to return to defendant when the lease expired on September 30th, 1969. Defendant also filed a third party demand against T.C.A. for the September rent which T.C.A. had withheld as previously stated. T.C.A. answered this third party demand and reconvened against Boisdore. T.C.A. also filed a third party demand against Brignac for the costs of repairs. All matters were taken up and heard in the trial court.
*465 The trial court rendered a decision in favor of plaintiff against defendant for the amount of $550.00 plus legal interest. Additionally, the court rendered a decision in favor of Boisdore on his third party demand against T.C.A. in the amount of $1,777.35 plus legal interest. Finally, there was judgment in favor of T.C.A. on its third party demand against plaintiff, owner of the building, in the sum of $1,776.50, plus legal interest, which was the amount spent by T.C.A. to have the floor repaired.
Each of the three parties have appealed to this court. However, we note that judgment of the First City Court was rendered November 19, 1971, and T.C.A., although it filed appeal on November 16, 1971, did not file appeal bond until December 16, 1971. The appeal bond is not timely filed. C.C.P. art. 5002. We cannot consider the appeal of T.C.A. However, although we cannot grant relief thereunder, we must necessarily consider the issues involved because of the inter-relationship of the facts and the judgment rendered.
Plaintiff asserts that T.C.A. did not follow the proper notification procedure as set out in the sublease between Boisdore and T.C.A. therefore T.C.A. is solely responsible for the cost of the repairs to the floor. To facilitate our analysis of the issue we must look to the notification provisions of the sublease which states:
"In the event that Landlord shall default in any of its obligations hereunder, and such default shall continue for a period of thirty (30) days following notice thereof from Tenant, Tenant may at its option (a) cancel this lease or (b) perform such obligations, deducting the cost thereof from the installments of rent thereafter due, and may hold Landlord liable for any damages suffered by reason of such default.
"Whenever notice is called for hereunder, the same shall be sent by certified United States mail to the addresses shown above."
The evidence indicates that a certified letter of notification from T.C.A. to Boisdore was sent on August 22, 1969, and the repair work on the floor was completed by September 10, 1969. It is obvious that a full thirty day period did not elapse between proper notice of the defect and commencement of the repair work. Our law is to the effect that if the lessor refuses to make repairs required of him under LSA-C.C. arts. 2692-2695 and 2698-2700, after being called upon to do so, a tenant may perform the necessary repairs and deduct the cost of these repairs from the rent. LSA-C.C. art. 2694 states as follows:
"Art. 2694. Lessee's right to make repairs upon lessor's failure
Art. 2694. If the lessor do not make the necessary repairs in the manner required in the preceding article, the lessee may call on him to make them. If he refuse or neglect to make them, the lessee may himself cause them to be made, and deduct the price from the rent due, on proving that the repairs were indispensable, and that the price which he has paid was just and reasonable."
See also Guillot v. Morgan, 165 So.2d 330 (La.App. 2nd Cir., 1964).
In the present situation, however, there is incorporated into the written lease a specific thirty day notice requirement. We must note that in a dispute arising under a contract of lease, the contract is considered as the law of the case. See Audrey Apartments v. Kornegay, 255 So.2d 792 (La.App. 4th Cir., 1971); Dikert v. Ruiz, 231 So.2d 633 (La.App. 4th Cir., 1970); Norman v. Lacroix, 148 So. 458 (La.App. 2nd Cir., 1933). Since T.C.A. did not comply with the agreed upon method of notice, it may not deduct the cost of the repair work from the rent installments. Therefore, the trial judge properly awarded judgment in favor of Boisdore and against T.C.A. for $1,777.35 plus legal interest, which was the amount of the withheld monthly rental installment. *466 We also are of the opinion that the trial court was correct in deciding in favor of plaintiff and against defendant for the amount of $550.00 plus legal interest which was the amount of the withheld installment as per the prime lease agreement. The mere fact that T.C.A. held back the monthly rent due defendant, which it had no right to do under the aforementioned terms of the contract of lease, did not give defendant the right to hold back on the monthly rental installment due plaintiff. The judgment below did not grant attorney's fees although requested. The lease agreement provides for 10% additional if the services of an attorney are necessary for collection of any amount due under the lease. We are not referred to any reason for not granting attorney's fees and we amend the judgment to add them.
Now it is necessary to decide if the judgment in favor of T.C.A. and against plaintiff in the amount of $1,776.50, which was the amount T.C.A. paid to have the floor repaired, was proper.
According to the terms of the written contract of lease between plaintiff and defendant, these repairs cannot be assessed to the plaintiff. The terms of the lease state as follows:
"Lessee is obligated not to make any additions or alterations whatever to the premises without written permission. All additions, alterations or improvements made by Lessee with or without consent of Lessor, no matter how attached (except movable trade fixtures), must remain the property of Lessor, unless otherwise stipulated herein, Lessee, however, expressly waiving all right to compensation therefor. The Lessor at his opinion, may require the building to be replaced in its original condition.
"Lessor or Agent or workmen shall have the right to enter the premises at any time for the purpose of making repairs necessary for the preservation of the property.
"Lessee assumes responsibility for the condition of the premises and Lessor will not be responsible for damage caused by leaks in the roof, by bursting of pipes by freezing or otherwise, or by any vices or defects of the leased property, or the consequences thereof, except in the case of positive neglect or failure to take action toward the remedying of such defects within reasonable time after having received written notice from Lessee of such defects and the damage caused thereby. Should Lessee fail to promptly so notify Lessor, in writing of any such defects, Lessee will become responsible for any damage resulting to Lessor or other parties."
The lease goes on to state further that, "All alterations or additions to the above herein leased property shall be first submitted to the Lessor or her Agents for approval."
According to defendant's testimony, plaintiff was not given any notice whatsoever of the defective condition or of the repairs in question, therefore it is impossible for her to have given the necessary approval.
According to the notification clause previously quoted in the written contract of sub-lease between defendant and T.C.A., the option to perform the necessary repair work and deduct the cost thereof from the rental installments arises thirty days after notice of the defective condition by certified mail. As stated above, this thirty day period did not elapse between proper notice and the commencement of the repairs. Therefore, T.C.A. has no right to reimbursement from defendant for the cost of repairing the defective floor, which could be passed on to plaintiff.
To allow a lessee to have repair work done to the leased premises with no notice or without the agreed upon notice, and hold the lessor responsible for the cost of the repairs, would be a violation of the lessor's rights. The lessor would be deprived of the opportunity to determine the necessity *467 of the work, to perform the work himself or to search for the best price available.
Our jurisprudence is to the effect that a lessee cannot recover against lessors for repairs without showing he called on the lessors to make repairs and they refused. See Hartz v. Stauffer, 163 La. 382, 111 So. 794 (1927); Miami Truck & Motor Leasing Co. v. Dairyman, Inc., 263 So. 2d 110 (La.App. 1st Cir., 1972); Teekell v. Drewett, 103 So.2d 525 (La.App. 2nd Cir., 1958).
We have also been referred to the case of Dikert v. Ruiz, 231 So.2d 633 (La.App. 4th Cir., 1970), in which the lessee caused repair work to be done to the leased premises, and demanded that the lessor reimburse him for the cost of said repairs. That case appears to follow the established rule stated above, because there was first a determination of whether the required written notice was given.
In deciding this issue the court concluded that under the particular contract of lease under consideration, there was proper written notice, and the lessor was bound to pay the price of the repairs. Had there not been proper notice, as in the situation in the case at bar, the cost of repairs would have been assessed to the lessee.
For the foregoing reasons, it is ordered that:
The judgment in favor of plaintiff and against defendant for the amount of $550.00 plus legal interest is amended to include an additional 10% of that amount as attorney's fees, and as amended, is affirmed;
The judgment in favor of defendant and against Total Community Action in the amount of $1,777.35 plus legal interest is affirmed;
The judgment in favor of Total Community Action and against plaintiff in the sum of $1,776.50 plus legal interest is annulled and reversed;
The judgment dismissing all other demands is affirmed. Total Community Action, Inc., to bear the costs of this appeal.
Affirmed in part.
Amended in part.
Reversed in part.